In re Theodore Ed MARTIN, d/b/a Dr. Ted E. Martin, Debtor.

Miguel and Emilia CAMACHO, Appellants,

v.

Theodore Ed MARTIN, d/b/a Dr. Ted E. Martin, Social Security No. 521–32–8982, Appellee.

Civ. A. No. 87–C–1665.
Bankruptcy No. 86 B 07202 C.
Adv. No. 87 C 382.

United States District Court, D. Colorado.

June 22, 1988.

Lee N. Sternal, Pueblo, Colo. and James R. Collins, Denver, Colo., for the Camachos.

David A. Kelly, Colorado Springs, Colo., for Martin.

## ORDER

CARRIGAN, District Judge.

Appellants Miguel and Emilia Camacho appeal the judgment of Visiting United States Bankruptcy Judge Harold L. Mai who denied their objection to the debtor-appellee Dr. Theodore Ed Martin's Chapter 7 discharge. Jurisdiction is proper under 28 U.S.C. § 158.

These facts are undisputed: In December 1982 the appellants obtained a jury verdict against the appellee Martin in the amount of $54,000 plus interest and costs. The jury found the appellee liable for his negligent performance of a sterilization procedure upon appellant Emilia Camacho.

Appellants initially were successful in their efforts to garnishee the appellee's accounts at banks in his hometown of Rocky Ford, Colorado. At some point, however, the appellee ceased to maintain accounts at the banks where his accounts were garnisheed.

On August 7, 1986, the appellee filed a bankruptcy petition in the United States Bankruptcy Court for the District of Colorado pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701 *et seq.* Appellee sought discharge as both an individual and as an individual engaged in business. Three days prior to filing his petition in bankruptcy, the appellee completed a form entitled "Statement of Financial Affairs for a Debtor Not Engaged in Business," or "Form 7" and a form entitled "Statement of Financial Affairs for Debtor Engaged in Business," or "Form 8" (together referred to as the "Financial Statements"). Both forms required the appellee to list his assets, and to disclose transfers of property made within the year immediately preceding the filing of the bankruptcy petition. Appellee signed both forms "under penalty of perjury." A Rule 2004 examination was conducted of the appellee and his wife on May 8, 1987.

On June 2, 1987, the appellants filed a "Complaint in Objection to Discharge and in Exception to Discharge of Debt" pursuant to 11 U.S.C. §§ 727(a)(2), 727(a)(4), and 727(a)(5) in the bankruptcy court. The first claim for relief alleges that the debtor willfully and intentionally failed to disclose in his Financial Statements the existence of three checking accounts. According to the appellants, these accounts contained assets of approximately $3,500 at the time the debtor signed the financial statements. The second claim for relief alleges that the debtor failed to satisfactorily explain the

disappearance of $2000.00 of his funds, in violation of § 727(a)(5).

The pertinent statute, 11 U.S.C. § 727, provides in relevant part:

(a) The court shall grant the debtor a discharge unless— ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

.  .  .  .  .

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

.  .  .  .  .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

...

Trial of the appellants' objection was held in the bankruptcy court on October 8, 1987. At the conclusion of the evidence, the bankruptcy court ruled that the appellants had "failed to sustain [their] burden of proof by a preponderance of the evidence, or by clear and convincing evidence." More specifically, the bankruptcy court determined that: (1) it was not shown that the debtor, with intent to hinder, delay or defraud, transferred, removed, or concealed property; (2) it was not shown by clear and convincing evidence that the debtor knowingly and fraudulently committed the acts listed in 727(a)(4); and (3) there was no showing of a "loss or deficiency of assets which [the debtor] failed to explain prior to rendering this decision...." (Record, Vol. II, at 65–66.) The bankruptcy court concluded:

"[B]ased upon the equities of the case, upon the concept of bankruptcy, and a fresh start, [I think] that this debtor ought to receive a discharge, and ought to be given the opportunity to continue his medical practice." (*Id.* at 66.)

On appeal, the appellants contend that the bankruptcy court erred by: (1) determining that an intent to hinder, delay or defraud creditors was not established by clear and convincing evidence even though the debtor admitted he tried to insulate his bank account funds from garnishment; (2) refusing to find that the debtor's failure to list three bank accounts in his bankruptcy petition schedules was clear and convincing evidence of a materially false statement; and (3) holding that the appellants failed to sustain the burden of proof required to deny the discharge. Thus the appellants appeal only the bankruptcy court's determinations under § 727(a)(2)(A) and § 727(a)(4)(A).

■ The party objecting to the debtor's discharge has the burden of proving that the acts complained of actually occurred. Bankruptcy Rule 4005. The grounds for excepting a debt from discharge under § 727 must be established by clear and convincing evidence. *In re Booth,* 70 B.R. 391 (Bankr.Colo.1987).

■ While the plaintiff has the ultimate burden of persuasion, the burden of going forward with the evidence shifts to the debtor once the plaintiffs have shown that the acts complained of occurred. *In re Martin,* 698 F.2d 883, 887 (7th Cir.1983). *In re Greenwalt,* 48 B.R. 804 (D.Colo.1985). The debtor must then come forth with a credible explanation of his actions. *Booth,* at 394. However, "the *ultimate* burden of proof in a proceeding objecting to a discharge lies with the plaintiff." *Martin, supra,* at 887 (emphasis in original).[1]

My review of the record indicates that the bankruptcy court correctly applied the shifting burden of production to the appellants' objection to discharge. Thus the remaining issue on appeal is whether the bankruptcy court's findings of fact should be sustained. Under Bankruptcy Rule 8013, the district court shall not set aside

---

1. The process of shifting the burden of going forward is somewhat analogous to the procedure applicable in Title VII cases. *In re Martin,* 698 F.2d 883, 887 n. 4 (7th Cir.1983).

the bankruptcy court's findings of fact "unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." The remainder of this order discusses whether the bankruptcy court's findings of fact regarding objection to discharge under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A) were clearly erroneous as a matter of law.

### 1. *11 U.S.C. § 727(a)(2)(A).*

■ Appellants contend that the debtor Martin unlawfully transferred, removed, and concealed his assets prior to the filing of his bankruptcy petition. In order to sustain an objection to discharge under § 727(a)(2)(A), the evidence must establish: (1) that the debtor transferred, removed, or concealed the property; (2) that such property belonged to the debtor; (3) that the transfer, removal, or concealment occurred within one year before the petition in bankruptcy was filed; and (4) the act was done with an intent to hinder, delay or defraud a creditor. *In re Shumate,* 55 B.R. 489, 493 (Bankr.W.D.Va.1985); *Greenwalt, supra,* 48 B.R. 804; *In re Crane,* 13 B.R. 445 (Bankr.Ala.1980).

■ In the present action, the first three elements necessary for an objection to discharge under § 727(a)(2)(A) are not substantially disputed. Appellee admitted at trial that he closed his bank accounts that were being garnisheed by the appellants, and that he transferred the funds from those accounts into three bank accounts whose existence he failed to disclose on his Financial Statements.

The first account was the "Valley Family Practice Account" at Rocky Ford National Bank. Appellee had opened this account in July 1983, and closed it on May 8, 1986. This account was used in the operation of his medical practice. Also on May 8, 1986, the appellee transferred the funds from the closed Valley Family Practice Account into another account at Rocky Ford National Bank called the "Lynn Marshall Martin Account" that he directed his wife to open. This second undisclosed account replaced the Valley Family Practice Account as the medical practice's business account.

(Record, Vol. II, at p. 5.) Appellee acknowledged that the Lynn Marshall Martin Account was used for all the same purposes for which the Valley Family Practice Account had been used. (*Id.* at p. 7.) Additionally, the appellee admitted that checks written on the Lynn Marshall account after May 8, 1986 were actually checks prepared at the appellee's office and then simply signed by his wife. (*Id.* at p. 8.)

The third undisclosed account was at the Empire State Bank in Rocky Ford, Colorado. It had been open for approximately 11 years and apparently had been used for family transactions. Appellee admitted at trial that, within the year immediately preceding the filing of his bankruptcy petition, he had regularly caused money to be transferred from his medical practice's business accounts into the Empire State Bank Account. (Record, Vol. II, at p. 14.)

Thus the only genuinely disputed issue under § 727(a)(2)(A) is whether the debtor either transferred, removed, or concealed the bank account funds with the intent to hinder, delay or defraud the appellants. As discussed, *supra,* the bankruptcy court ruled that the appellants failed to meet their burden of proof on this issue.

Intent to hinder, delay or defraud a creditor may be proved by circumstantial evidence. *In re Bobroff,* 58 B.R. 950 (Bankr. E.D.Pa.1986); *In re Cycle Accounting Services,* 43 B.R. 264 (Bankr.E.D.Tenn.1984); *see also In re Kessler,* 51 B.R. 895, 898 (Bankr.Kan.1985) (fraudulent intent may be established by circumstantial evidence or by inferences drawn from a course of conduct); *Crane, supra,* 13 B.R. 445 (intent may be implied as a necessary consequence of the debtor's acts).

The evidence at trial of the appellee's intent to hinder, delay or defraud the appellants included the appellee's admission that he changed his business account from the Valley Family Practice Account to the Lynn Marshall Martin Account at least partly to avoid further garnishment by the appellants in their effort to collect their judgment against him. (Record, Vol. II, at p. 25). This admission alone establishes a

prima facie showing that the appellee transferred, removed, and concealed his bank account funds in an effort to hinder the appellants from recovering their judgment against him. Additionally, it demonstrates that the appellee tried to delay the appellants' attempt to collect their judgment. Moreover, the appellee's conducting of his medical practice's business affairs through a bank account opened solely in his wife's name also is indicative of the appellee's knowing intent to hinder and delay the appellants. Because I find that the appellee intended to hinder and delay the appellants, I need not decide whether he also intended to defraud the appellants.

Appellee's proffered reason for transferring his funds out of the accounts subject to garnishment and into the three concealed accounts was that he wanted to pay other creditors. (Record, Vol. II, at p. 58.)

I conclude that the appellee's proffered explanation is pretextual. Despite his reference to other "creditors" who allegedly received the funds that he transferred out of the garnisheed accounts, the appellee never identified those "creditors." Additionally, he never alleged that his obligation to them arose prior to the time he purportedly made the payments to them. In any event, the appellee clearly was playing "hide and seek" with his assets in an effort to prevent the appellants from collecting their judgment against him.

I therefore conclude that the bankruptcy court's findings of fact regarding § 727(a)(2)(A) discharge were clearly erroneous. Appellants met their burden of showing by clear and convincing evidence that the appellee knowingly and fraudulently, with the intent to hinder and delay the appellants, transferred, removed, and concealed his property within one year before the date his bankruptcy petition was filed.

### 2. *11 U.S.C. § 727(a)(4)(A).*

The primary purpose of § 727(a)(4)(A) is to ensure that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without the need for the trustee or other interested parties to dig out these true facts in examination or investigations. *In re Diodati*, 9 B.R. 804, 807 (Bankr.Mass.1981). In order to sustain an objection to discharge under 11 U.S.C. § 727(a)(4)(A), the evidence must establish: (1) that the debtor made a false oath or account in connection with his or her bankruptcy proceeding; and (2) that such false oath or account was knowingly and fraudulently made. *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984). The oath or account must have related to a material fact. *Kessler, supra,* 51 B.R. at 899.

A material omission from the debtor's Chapter 7 schedules, or a false answer on a statement of financial affairs may constitute a false oath for purposes of § 727. *Comprehensive Accounting Corp. v. Morgan,* 43 B.R. 264, 271 (Bankr.E.D.Tenn. 1984); *Bobroff, supra,* 58 B.R. at 953. It may be inferred from the circumstances that the debtor acted "knowingly and fraudulently" in omitting a material fact. *In re Braidis,* 27 B.R. 470, 472 (Bankr.E.D. Pa.1983); *Bobroff,* at 953.

At trial, the appellee acknowledged that he had signed the two Financial Statements on August 4, 1986, and that in so signing he had certified, "under penalty of perjury," that the information set forth in the Financial Statement was true and correct to the best of his "knowledge, information and belief." (Record, Vol. II, at p. 12.)

Question number 7–A of Financial Statement Form 8 asked:

> "What bank accounts have you maintained alone or together with any other person and in your own or any other name within the two years immediately preceding the filing of the original petition herein?"

Debtor admitted that the only answer supplied was:

> "Checking Account at Rocky Ford National Bank, Rocky Ford, Colorado in the name of Dr. Ted E. Martin, account closed June, 1986." (*Id.* at p. 11.)

The same answer was given to a similar question asked on Form 7. Thus nowhere on either Form 7 or Form 8 did the appellee disclose the existence of either the Valley

**324**

Family Practice Account, the Lynn Marshall Martin account, or the Empire State savings Bank Account.[2]

Question 12b. of Form 7 and Question 14b. of Form 8 on the Financial Statements both asked the appellee whether he had transferred property in the year immediately preceding the filing of his bankruptcy petition. Appellee answered both questions: "No." Yet at trial, the appellee admitted that he had failed to disclose the existence of a $69.34 per month life insurance payment to the Western Farm Bureau Life Insurance Company, and an April 16, 1986, payment in the amount of $957.96 for the first and last months' payments on certain office equipment to a company called "Circadian." (*Id.* at pp. 35–36.) He further acknowledged that he had not revealed a $6,000.00 expenditure that he had made for an addition to his home within one year prior to the filing of his bankruptcy petition, or that it had been paid for out of the Empire State Bank Account. (*Id.* at pp. 45–46.) Moreover, Martin admitted that he had represented under oath at his Rule 2004 Examination that the information in his Financial Statements was still true and accurate to the best of his knowledge. (*Id.* at pp. 20–21.)

Appellee's failure to reveal the existence of the three accounts and the transfers discussed in the preceding paragraph was "material" because it hindered the appellants' discovery of assets, as well as their discovery of the appellee's past transactions that might have led to other objections to discharge.

I thus find and conclude that the appellants made a preliminary showing that the appellee knowingly and fraudulently failed to disclose the existence of the three bank accounts, as well as the transfers of the other property discussed above.

Appellee's proffered explanation for his failure to disclose the three accounts on the Financial Statement was that:

"[I] didn't read all the small print . . . [and] I don't having any excuse for sign-

ing this and not reading it carefully, and I apologize." (Record, Vol. II, at pp. 17–18).

Notably, however, Martin offered no explanation for not having filed amended schedules reflecting the existence of the bank accounts until just a few days prior to the trial.

Appellee's proffered reason for failing to list the Valley Family Practice Account, the Lynn Marshall Martin Account, and the Empire State Bank Account is clearly insufficient to overcome the evidence that he knowingly and fraudulently failed to reveal their existence. True, a false statement in the bankruptcy schedules or statements of financial affairs caused by mere mistake or inadvertence is not sufficient to require denial of discharge, because the debtor must have fraudulently intended to make the false oath or account. Nevertheless, "the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may give rise to the level of fraudulent intent necessary to bar a discharge." *Diodati, supra,* 9 B.R. at 808; *see also Bobroff, supra,* 58 B.R. 953 ("[t]he requisite intent under § 727 may be predicated on evidence of a pattern of reckless and cavalier disregard for the truth"); *Cycle Accounting Services, supra,* 43 B.R. at 273 (reckless indifference to the truth is sufficient to deny discharge).

In the present action, I find and conclude that there was clear and convincing evidence that the appellee acted in reckless disregard of both the serious nature of the information sought by the Financial Statements, and the need for detail and accuracy, when he failed to reveal the existence of the three bank accounts, and the other transfers. Appellee is a well-educated physician. Moreover, his operation of his own medical practice required him to appreciate the need for accurate accounting of assets and expenditures. Furthermore, his responsibilities as a doctor have required him

---

**2.** Appellee admitted at trial that he had not disclosed the existence of the Empire State Bank Account when he was questioned by the trustee

during the April 17, 1987, Rule 2004 Examination. (Record, Vol. II, at p. 22.)

to sign prescriptions for narcotic drugs. Appellee either fully realized the seriousness of the Financial Statements, or was reckless in failing to comprehend their import, when he completed and signed them "under penalty of perjury."

Additionally, I find incredible the appellee's contention that he read the Financial Statements closely enough to list the bank account that he had closed in June 1986, but allegedly failed to comprehend his responsibility to list the three accounts that still contained his assets. The same is true with respect to the other transfers that the appellee failed to disclose.

█ I therefore conclude that the evidence at trial established by clear and convincing evidence that the appellee knowingly and fraudulently made false oaths and statements in connection with his bankruptcy proceedings. It is painfully obvious that the debtor perpetrated a bank account shell game in an effort to deny the appellants their legal right to collect their judgment against him. The Bankruptcy Code does not condone such conduct. *See Cycle Accounting Services, supra,* 43 B.R. at 272 ("creditors are entitled to truthful responses to enable them to investigate for themselves"); *Diodati, supra,* 9 B.R. at 807 ("creditors are entitled to honest and accurate signposts on the trial showing what property has passed through the debtor's hands during the period prior to his bankruptcy"). While our nation's bankruptcy laws offer those in difficult financial straits an opportunity to obtain a fresh start, certain obligations condition that opportunity, *e.g.,* the obligation of truthful disclosure. In the present action, the appellee tried to take advantage of the opportunity without performing the obligations.

Accordingly, IT IS ORDERED that the decision of the bankruptcy court denying the appellants' objection to discharge is REVERSED.

IT IS FURTHER ORDERED that this action be remanded to the United States Bankruptcy Court for the District of Colorado for proceedings not inconsistent with this order.