**In re Phyllis A. ARNOLD,**

**United States Trustee, Plaintiff,**

**v.**

**Phyllis A. Arnold, Defendant.**

**Bankruptcy No. 04–51787.**
**Adversary No. 06–05016.**

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

March 29, 2007.

James G. Cosby, Roanoke, VA, for Plaintiff.

Harry Wayne Brown, Roanoke, VA, for Defendant.

---

1. Both the real estate and mobile home were owned free and clear of any liens.

## DECISION AND ORDER

ROSS W. KRUMM, U.S. Bankruptcy Judge.

At Harrisonburg in said District this 29th day of March 2007:

The matter before the court for decision arises as a result of a complaint filed by the United States Trustee seeking to deny the discharge of Phyllis A. Arnold (herein "the Debtor") pursuant to 11 U.S.C. §§ 727(a)(2), (a)(4), and (a)(6). The court conducted the trial in this matter in Harrisonburg on January 16, 2007. The court took the matter under advisement. Each party to the adversary proceeding filed a post-trial brief.

The court heard testimony at trial, observed the witnesses, reviewed the briefs and the trial transcript. After due consideration and for the reasons stated herein, the court finds for the Debtor on all counts.

## BACKGROUND

On November 8, 2004, the Debtor filed an individual, voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Prior to filing, on March 27, 2003, the Debtor executed a Declaration of Trust, establishing the "Phyllis Arnold Revocable Living Trust" (herein "trust"). The Debtor appointed herself trustee. By Deed of Gift executed the same day, the Debtor transferred her interest in a mobile home and real estate to the trust.[1] On her Schedule A, the Debtor disclosed that she owned no real property. On Schedule B, Item 19,[2] the Debtor disclosed that she owned an "Interest in Phyllis Arnold Revocable Living Trust (value unknown)" and valued it at one dollar ($1.00).

---

2. Item 19 requires a debtor list "[c]ontingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance, or trust."

At the Section 341 meeting of the creditors on December 7, 2004, the Chapter 7 Trustee inquired about the value of the property held by the trust. The Debtor disclosed that the value of the property held in the trust was approximately $20,000. On March 1, 2005, the Chapter 7 Trustee filed a motion for turnover of all of the trust assets. On May 3, 2005, the court entered an order granting the motion for turnover. On May 5, 2005, the Debtor filed a motion to convert the case to Chapter 13. The court granted the motion to convert and entered an order converting the case to Chapter 13 on May 10, 2005.

On July 20, 2005, the Debtor filed Amended Schedules A and B. Amended Schedule A disclosed an interest, valued at $11,400, in the real estate. Amended Schedule B disclosed an interest, valued at $8,400, in a manufactured home and no longer listed an "Interest in the Phyllis Arnold Revocable Living Trust." The real estate and mobile home listed were the same as those transferred by Deed of Gift to the trust on March 27, 2003.

On November 29, 2005, on the Chapter 13 Trustee's motion, the court entered an order converting the case back to Chapter 7. Upon reconversion, the Chapter 7 Trustee emailed counsel for Debtor the documents necessary to complete the turnover

under the May 3, 2005 order (herein "conveyance documents"). Counsel for the Debtor, however, failed to provide the Debtor with the conveyance documents or inform the Debtor of his receipt of these documents. As such, the Debtor was unaware of the need to sign the conveyance documents. (Transcript at 39–40, 47).

On December 22, 2005, the Chapter 7 Trustee filed a motion for contempt, citing the Debtor's failure to comply with the turnover order. The motion sought to recoup the costs born by the Chapter 7 Trustee in attempting to recover the property held by the trust for the benefit of the estate. After holding a hearing on the motion on March 22, 2006, the court took the matter under advisement. Immediately following the hearing, the Debtor provided the Chapter 7 Trustee with title to the mobile home and, soon thereafter, provided the deed to the real estate, which brought the Debtor in compliance with the terms of the turnover order,[3] albeit untimely. The court granted the motion for contempt on September 15, 2006, ordering the Debtor to reimburse the bankruptcy estate the legal fees it incurred seeking turnover of the real estate and mobile home. The Debtor promptly complied with the order.[4]

On April 28, 2006, the United States Trustee filed a complaint seeking to deny

**3.** On January 30, 2006, the Debtor filed a Motion to Approve Sale of her real estate and mobile home for $20,000, and attached an appraisal dated December 13, 2004, which appraised the subject property for $12,000.00, and a tax receipt that assessed value of the mobile home as $9,200.00. By letter filed with the court on February 28, 2006, the Chapter 7 Trustee consented to the sale at the stated price. On March 6, 2006, the court granted the Motion to Approve Sale, requiring the proceeds of the sale be collected by the Chapter 7 Trustee for the benefit of the estate. These documents were needed by the Chapter 7 Trustee to complete the sale. The Chapter

7 Trustee consummated the sale on April 14, 2006.

**4.** At the December 7, 2006, hearing on the United States Trustee's complaint seeking denial of discharge, the United States Trustee conceded that the Debtor complied with the terms of the turnover order when she provided the Chapter 7 Trustee with the title to the mobile home and the deed to the real estate. The United States Trustee also conceded that the Debtor's belated caused no actual estate losses, except for the legal fees which she reimbursed.

the discharge of the Debtor. The United States Trustee alleged that the Debtor should be denied her discharge because she concealed the value and made a false oath or account concerning the value of the property held by the trust. The United States Trustee also alleged that the Debtor willfully and intentionally refused to obey the turnover order.

In response, the Debtor denied all allegations. On January 16, 2007, the Debtor testified that she believed the bankruptcy schedules required her to disclose the value of her beneficial use of the trust property, not the value of the property itself. Debtor explained that her understanding of the disclosure requirements and the value she disclosed were based upon the advice of her attorney, who had also helped the Debtor set up the trust in March 2003.[5] Finally, counsel for the Debtor argued that the Debtor did not refuse to obey the court's turnover order, but, rather, that she failed to timely comply with the order, ultimately complied, and that her actions did not warrant the denial of her discharge.

## DISCUSSION

This court has jurisdiction over the parties and the subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334. An objection to discharge is a "core" bankruptcy matter pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is proper in this District under 28 U.S.C. § 1409(a).

■ The United States Trustee has the burden of proving the objection to discharge. *See* Fed. R. Bankr.P. 4005. The United States Trustee must prove each element of the objection to discharge under Section 727(a) by a preponderance

of the evidence. *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 249 (4th Cir.1994) ("the standard of proof in a discharge action is the preponderance of evidence") (citing *Combs v. Richardson*, 838 F.2d 112, 116 (4th Cir.1988)).

### Section 727(a)(2)(A)

■ Count I of the complaint alleges that the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(2). A debtor is not entitled to a discharge if the debtor "with intent to hinder, delay, or defraud a creditor or an officer of the estate … has … concealed" property of the debtor within one year prior to the date of the filing of the petition or property of the estate after the filing of the petition. 11 U.S.C. § 727(a)(2). To succeed on a Section 727(a)(2) claim, the United States Trustee must prove by a preponderance of the evidence: (1) that the act complained of was done within one year prior to the filing date of petition filing, or, alternatively, after the date of filing; (2) the act was that of the debtor; (3) it consisted of a transfer, removal, destruction or concealment of the debtor's property, or, alternatively, the estate's property; and (4) it was done with an intent to hinder, delay, or defraud either a creditor or an officer of the estate. *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 215 (Bankr.D.S.C.2001); *see Lee Supply Corp. v. Agnew (In re Agnew)*, 818 F.2d 1284, 1287 (7th Cir.1987); 6 Collier on Bankruptcy P 727.02[1] (15th ed.2006). If the United States Trustee fails to prove any one element, the Debtor will not be denied a discharge.

---

**5.** Although the Debtor knew the value of the real estate and mobile home to be approximately $20,000 (Transcript at 10–11), she listed the value of her use of the property and not the property itself on her schedules because she understood the trust owned the property. (Transcript at 33–35, 75).

In this case, the United States Trustee does not allege that the transfer of the assets to the revocable trust is grounds for denial of discharge under Section 727(a)(2), because the transfer occurred more than one year prior to filing of the petition. The United States Trustee does, however, allege the Debtor concealed the value of property of the estate by valuing her interest in the trust at one dollar and that she did so with the intent to hinder, delay or defraud a creditor or officer of the estate.[6] In response, the Debtor argues that she lacked the requisite intent to hinder, delay or defraud. In support of this argument, the Debtor alleges that she relied on the advice of her attorney when valuing her interest in the trust at one dollar.

The Debtor's argument is not without support. Actual intent to hinder, delay or defraud may be negated by a good faith reliance upon the advice of an attorney. *In re Adeeb*, 787 F.2d 1339, 1343 (9th Cir.1986); *see also United States v. Miller*, 658 F.2d 235, 237 (4th Cir.1981) ("The essential elements of the [reliance] defense are (a) full disclosure of all pertinent facts to an expert, and (b) good faith reliance on the expert's advice."); *In re Ingle*, 70 B.R. 979, 984–85 (Bankr.E.D.N.C.1987) (citing *Adeeb*, 787 F.2d at 1343).

In *Adeeb*, the debtor, prior to filing bankruptcy, transferred real property to friends for no consideration upon the advice of his attorney. *Id.* at 1341–42. Although the court stated that "[g]enerally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts," the court ruled that it would not avail the defendant of the reliance defense on the particular facts of the case. *Id.* at 1343. Relying on the bankruptcy court's finding that the debtor "knew that the purpose of the transfers was to hinder or delay creditors of the debtor," the court of appeals held that such a finding precluded the defense of good faith reliance on attorney advice. *Id.*

In this case, there is no evidence that the Debtor intended to hinder, delay or defraud a creditor or officer of the estate by valuing her interest in the trust at one dollar nor did she know this would cause a hindrance or delay.[7] According to the tes-

---

6. Under the doctrine of continuous concealment:

    [W]hen dealing with a concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy, this concealment is within the reach of § 727(a)(2) regardless of when the transfer and concealment initially took place. In other words, the doctrine permits courts to find a concealment during the year prior to bankruptcy even if the initial act of transfer and concealment took place before the one year period as long as the debtor allowed the property to remain concealed into the critical year. Although this doctrine allows some flexibility with the timing requirements of § 727(a)(2), the essential focus remains the same: plaintiffs must prove the requisite conduct as well as the requisite intent actually occurred or continued within the year preceding bankruptcy.

    *Hooper*, 274 B.R. at 215–16 (citations omitted).

    In this case, the United States Trustee does not argue that the Debtor concealed the real estate and mobile home within one year of filing bankruptcy, rather the United States Trustee argues that the Debtor intended to hinder or delay the Chapter 7 Trustee by concealing the value of her assets in her schedules, which would have occurred in the time frame provided under Section 727(a)(2).

7. At the trial the United States Trustee conceded that the court does not need to address the issue of whether the transfer of the property to the revocable trust satisfied the elements of Section 727(a)(2), because the transfer occurred more than one year prior to the filing of the petition. (Transcript at 73).

timony of the Debtor, she knew the value of the real estate and mobile home was approximately $20,000. However, the Debtor explained that the one dollar valuation reflected her understanding, based on the advice of her attorney, that she was listing the value of her beneficial use of the property held in trust, not the value of the property itself. She went on to explain that neither she nor her attorney knew the value of the benefit she received from her use of the trust property, therefore, her attorney advised her to list the value as one dollar on her schedules. (Transcript at 34–35, 75). Therefore, unlike *Adeeb*, where the debtor knew the transfer he made was to hinder or delay a creditor, the Debtor's valuation of the trust property was not made with either an intent to hinder, delay or defraud or with the knowledge that her actions might hinder, delay or defraud. The Debtor relied on the advice of her attorney in good faith.

**Section 727(a)(4)**

■ Count II of the Complaint alleges that the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(4)(A) because the Debtor knowingly and fraudulently made a false oath or account in connection with her bankruptcy case. A debtor is not entitled to a discharge if the debtor made a false statement under oath, which the debtor knew to be false, relating to a material matter in the bankruptcy proceeding with the intent to defraud. *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir.1987).

■ The requirement that a false oath be made with the intent to defraud may be established in two ways. *Dean v. McDow*, 299 B.R. 133, 140 (E.D.Va.2003); *Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (E.D.Va.1997). First, circumstantial evidence may be used to establish fraudulent intent. *McDow*, 299 B.R. at

140; *see also Sackett v. Shahid (In re Shahid)*, 334 B.R. 698, 710 (Bankr. N.D.Fla.2005) ("When there is a pattern of omissions, it is logical to conclude the debtor did in fact make a false oath in connection with the case."). Second, proof of a " 'reckless indifference to the truth' constitutes the 'functional equivalent of fraud.' " *McDow*, 299 B.R. at 140 (quoting *National Post Office Mail Handlers, etc. v. Johnson*, 139 B.R. 163, 166 (Bankr.E.D.Va.1992)).

■ Reliance on advice of counsel made in good faith may negate an intent to defraud under Section 727(a)(4)(A). *Rutland v. Petersen (In re Petersen)*, 323 B.R. 512, 519 (Bankr.N.D.Fla.2005) (citing *In re Geller*, 314 B.R. 800, 807 (Bankr.D.N.D. 2004) ("Reliance on attorney advice absolves a debtor of the fraudulent intent required by the false oath discharge exception if such reliance was reasonable and the attorney was fully informed when he gave such advice, especially in a case where neither the debtor nor her attorney manifested any ill intent.")); *see also In re McKain*, 325 B.R. 842, 849 (Bankr.D.Neb. 2005) (citing 4 Collier on Bankruptcy P 521.03[3] (15th ed. rev.2005)) ("A debtor's attorney also bears a significant degree of responsibility in assuring to the best of his or her ability that the schedules are complete and accurate before they are filed.").

■ In this case, there is no evidence the Debtor's valuation of her interest in the trust was made with fraudulent intent. There was no pattern of omission in this case and no other circumstantial evidence of fraudulent intent by the Debtor. Further, there is no evidence of reckless indifference to the truth. The Debtor relied on the advice of counsel in valuing her interest in the trust. (Transcript at 33–35). The Debtor relied on the advice of her attorney in good faith and such reliance warrants the conclusion that the Debtor's

valuation of her interest in the trust was not made with fraudulent intent. Finally, the fact that the Debtor was forthcoming as to the value of the property held in the trust at the Section 341 meeting held on December 7, 2004, supports the conclusion that fraudulent intent was lacking.

Section 727(a)(6)

Count III of the Complaint alleges that the court should deny the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(6)(A) because the Debtor willfully refused to obey the court's turnover order of May 3, 2005. A debtor is not entitled to a discharge if debtor has refused to obey a lawful order of the court. *See* 11 U.S.C. 727(a)(6)(A). The court must find that the Debtors' lack of compliance with the relevant court order was willful and intentional. *Jordan v. Smith,* 356 B.R. 656, 659–60 (E.D.Va.2006) (citing *In re Gentry,* 275 B.R. 747, 754 (Bankr.W.D.Va.2001) (concluding that a majority of courts require a willful or intentional act, as opposed to a mere a mistake or inability to comply, in order to deny a discharge under Section 727(a)(6)(A))).

The United States Trustee may meet this burden by demonstrating that the debtor received the order in question and failed to comply with its terms. *Jordan,* 356 B.R. at 660; *LaBarge v. Ireland (In re Ireland),* 325 B.R. 836, 838 (Bankr. E.D.Mo.2005); *Katz v. Araujo (In re Araujo),* 292 B.R. 19, 24 (Bankr.D.Conn. 2003). "Such a showing then imposes upon the debtor an obligation to explain [her] non-compliance." *Missouri ex rel. Nixon v. Foster (In re Foster),* 335 B.R. 709, 716 (Bankr.W.D.Mo.2006).

Whether a violation of a court order warrants a denial of discharge is a matter within the trial court's discretion. *Commerce Bank & Trust Co. v. Burgess (In re Burgess),* 955 F.2d 134, 138 (1st Cir.1992) (finding that the bankruptcy judge who issues an order is in the best position to evaluate whether a delay in compliance warrants denial of discharge); *Devers v. Bank of Sheridan, Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir. 1985) (holding that whether particular violations of its orders are so serious as to warrant a denial of discharge is a matter that is within the trial court's discretion); *In re Jones,* 490 F.2d 452 at 456 (5th Cir.1974) (affirming bankruptcy court's discharge of debtor despite delay in complying with court order to produce information where bankruptcy court found that failure to comply was due to inadvertence and bankruptcy court is in best position to make such an evaluation); *In re Kokoszka,* 479 F.2d 990, 997 (2d Cir.1973) ("the [bankruptcy court] must exercise [its] discretion whether or not to grant a discharge, even when an order has not been followed"). Failure to comply with a court order may be excused when a debtor's failure to comply is the result of reliance on faulty legal advice. *In re Fragetti,* 24 B.R. 392, 395 (Bankr.S.D.N.Y.1982) ("The witnesses' failure to comply with a court-ordered examination cannot be characterized as a refusal by the debtors to comply with a court order so as to warrant a denial of their discharge.").

In this case, the Debtor's untimely compliance with the turnover order does not warrant a denial of her discharge. At trial, the Debtor explained that her attorney failed to timely provide her with the conveyance documents, thereby making it impossible for her to comply with the terms of the turnover order. (Transcript at 39–40, 47). There is no evidence to rebut this testimony. Thus, the United States Trustee fails in carrying its burden to show receipt of the order in time to comply. When the contempt motion was filed, the Debtor did comply with the turn-

over order, albeit untimely, and proceeded to reimburse the bankruptcy estate the costs it incurred attempting to enforce the turnover order.[8]  Therefore, the court, in its discretion, does not find reason to deny the Debtor her discharge pursuant to Section 727(a)(6).

## CONCLUSION

For the reasons stated above, the court finds that United States Trustee failed to prove by a preponderance of the evidence the necessary elements of proof under 11 U.S.C. §§ 727(a)(2) and (a)(4).  With respect to 11 U.S.C. § 727(a)(6), the court finds that the actions of the Debtor are insufficient to warrant denial of the Debtor's discharge.  Accordingly, it is

## ORDERED:

That judgment be, and is hereby, entered for the Defendant.  It is

## FURTHER ORDERED:

That the complaint be, and is hereby, dismissed.

Copies of this order are directed to be sent to James G. Cosby, Esquire, Office of the U.S. Trustee, First Campbell Square Building, 210 First Street, Suite 505, Roanoke, Virginia 20011; and to Harry W. Brown, Esquire, Counsel for the Debtor, 335 W. Church Ave., Roanoke, Virginia 24016–5007.

---

8.  The terms of the contempt order required the Debtor bear these costs.  The Debtor  timely complied with the contempt order.